UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ST. PAUL INSURANCE COMPANY
A/S/O EVERSON MUSEUM OF ART
And ACE INDEMNITY INSURANCE
COMPANY,

                                      Plaintiffs,

    -v.-                                                       5:04-CV-0276
                                                            (NPM /GHL)

REGAL WARE, INC.,

                                      Defendant.
_____

REGAL WARE, INC.,

                                      Third Party Plaintiff,

    -v.-

KOMAR MANUFACTURING CO., INC.,

                                       Third Party Defendant.
_____

APPEARANCES                          OF COUNSEL:

SHEPS LAW GROUP, P.C.            ROBERT C. SHEPS, ESQ.
Attorney for Plaintiffs
St. Paul Insurance Company and
Ace Indemnity Insurance Company
35 Pinelawn Road, Suite 106 East
Melville, New York 11747

LAW OFFICES OF JOSEPH D. CALLERY    JAMES C. BRADY, ESQ.
Counsel for Defendant/Third-Party Plaintiff
Regal Ware, Inc.
10 Telergy Parkway, Suite 2000
East Syracuse, New York 13057

EUSTACE & MARQUEZ                             ROSE M. COTTER, ESQ.
Counsel for Third-Party Defendant
Komar Manufacturing Co., Inc.
1311 Mamaroneck Avenue, Third Floor
White Plains, New York  10605

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM-DECISION AND ORDER

**I.     Introduction**

This subrogation action was commenced on August 20, 2003 by St. Paul Insurance Company ("St. Paul") and Ace Indemnity Insurance Company ("Ace") (collectively, the "Plaintiffs"), as subrogees of Everson Museum of Art ("Everson") against Regal Ware, Inc. ("Regal Ware"), in connection with a fire that caused damage to Everson's premises on May 19, 2002.  Originally filed in New York State Supreme Court, in the County of New York, Regal Ware removed the case to federal court on October 2, 2003 on the grounds of diversity of citizenship, pursuant to 28 U.S.C. § 1441.  The case was transferred from the Southern District to the Northern District of New York, and was received by the Northern District on March 9, 2004 (Dkt. No. 1).  St. Paul is a Minnesota citizen; Ace is a Pennsylvania citizen; Regal Ware is a Wisconsin citizen, and the amount in controversy exceeds the threshold amount of $75,000.00 exclusive of interests and costs.  Accordingly, the Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441 and 1332.

On August 11, 2005, Regal Ware filed a third party complaint against Komar

Manufacturing Co, Inc. ("Komar"), a citizen of the state of Pennsylvania, on the basis of contractual and/or common law indemnification (Dkt. No. 14). On August 25, 2005, the Plaintiffs, both first party insurers for Everson's property, filed a direct claim against Komar pursuant to Rule 14(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), seeking indemnification from Komar to the extent that Komar is found to be "negligent, careless or otherwise responsible" for the damages suffered by Everson (Dkt. No. 16). Consequently, because Ace and Komar are both citizens of Pennsylvania, complete diversity in the case at bar is now lacking.

Currently before the Court is Komar's motion to dismiss the Plaintiffs' direct action for lack of subject matter jurisdiction (Dkt. No. 27). For the reasons set forth below, Komar's motion will be granted.

## II.     Factual Background

For the purpose of this motion only, the following facts are taken from the complete record of the case, and are presumed to be true. The Everson Museum of Art, 104 Harrison Street, Syracuse, New York, was damaged by fire on Sunday, May 19, 2002.

> A small fire . . . in the basement of the Everson Museum of Art generated a lot of smoke but did not damage any art . . . museum director Sandra Trop said. Syracuse Fire Chief John Cowin said the fire started shortly after noon in a small basement storage room and kitchenette . . . The building is predominantly concrete and the fire did not spread beyond the one room . . . Fire officials told Trop the fire was caused by a coffeepot . . . .

 (Dkt. No. 27, Tab 1), Minor Fire Hits Everson, THE POST STANDARD, available at

3

www.syracuse.com, May 20, 2002.

A report contained in Exhibit D of Komar's motion to dismiss, specifically a "mitigation of smoke damage" report,[1] also gives a brief synopsis of the fire.

> [A]t 12:10 p.m., a fire was detected in a small room [in the museum], located in a temporary storage area between the auditorium stage and storage. Consultations indicate a large coffee urn, which had been set up to brew[] a short time earlier, caused the fire. Smoke/heat detectors set off an alarm, started the sprinkler system . . . and shut down the HVAC system as designed to do . . . The fire was put out and confined to the small room. However, smoke invaded most spaces within the building . . . .

(Dkt. No. 27, Exhibit D, *Everson Museum of Art Report, Page 1-2 of 13*.)

Prior to the fire date of May 19, 2002, the following events took place: Regal Ware, a manufacturer of, *inter alia*, small appliances, including a 30-cup coffee maker model number 7030, ordered power cords from Komar. Komar supplied said power cords, and Regal Ware packaged those power cords with the coffee urns or pots it manufactured. One of those coffee pots, the aforementioned model 7030, was allegedly purchased by Everson.

Some time after May 19, 2002, Plaintiffs St. Paul and Ace paid monies to Everson in excess of $400,000.00, pursuant to policies of insurance for damages allegedly caused by the May 19 fire, and claim to be subrogated to all of their insured's rights as to third parties who may have caused or been responsible for the loss. The Plaintiffs commenced an indemnity action against Regal Ware, the manufacturer of the coffee pot, to recover

---

[1] "Mitigation of Smoke Damage at the Everson Museum of Art Syracuse, NY," p.1, compiled by The West Lake Conservators, LTD, Skaneateles, New York 13152.

the monies paid to Everson. As stated above, Regal Ware, in turn, filed a third-party complaint against Komar, alleging active and passive negligence on Komar's part. The Plaintiffs subsequently filed a direct complaint against Komar, seeking indemnification from Komar for the damages suffered by Everson.

### III. Discussion

#### A. Legal Standards

##### 1. Rule 12(b)(1)

Fed. R. Civ. P. Rule 12(b)(1) requires a court to dismiss an action when it lacks jurisdiction over the subject matter. "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." Lunney v. U.S., 319 F.3d 550, 554 (2d Cir. 2003). "After construing all ambiguities and resolving all inferences in a plaintiff's favor, . . . a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Aurecchione v. Schoolman, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotations and citations omitted).

##### 2. Rule 14

Third party practice in the federal court is governed by Fed. R. Civ. P. Rule 14. A defendant may bring in a third party, pursuant to Rule 14, as provided:

> (a) At any time after commencement of the action a defending party, as a third party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff

> . . . The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert any defenses as provided in Rule 12 and any counterclaims and cross-claims as provided in Rule 13 . . . .

Rule 14 also states when a plaintiff may bring in a third party:

> (b) When a counterclaim is asserted against a plaintiff, the plaintiff may cause a third party to be brought in under circumstances under which this rule would entitle a defendant to do so.

Fed. R. Civ. P. Rule 14 (West 2006).

### 3. Supplemental Jurisdiction

Supplemental jurisdiction is governed by 28 U.S.C. 1367, stated here in pertinent part, which provides that

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.
>
> (b) **In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure**, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, **when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.**

28 U.S.C. § 1367 (West 2006) (emphasis added).

In his comprehensive Practice Commentary on 28 U.S.C. § 1367, David D. Seigel proffers the following explanation of subdivision (b):

> [S]ubdivision (b) of § 1367 is concerned only with the efforts of a plaintiff to smuggle in claims that the plaintiff would not otherwise be able to interpose against certain parties in certain specific contexts for want of subject matter jurisdiction. The repetition of the word "plaintiffs" at several rule-citing junctures in subdivision (b) makes this clear. . .
>
> Rule 14 of the Federal Rules of Civil Procedure is the procedural rule governing third party practice (impleader). Its primary role is to permit defendant D to implead third-party defendant X whenever X's relationship to D is such that D can call on X to indemnify or contribute to D all or part of what D may be held liable for to P, the plaintiff. D's impleader claim against X gets ancillary jurisdiction,[2] and nothing in subdivision (b) of § 1367 changes that . . .
>
> What is excluded [by subdivision (b) of § 1367] is the claim that P may try to assert directly against X after D impleads X. Rule 14(a) permits P, as a procedural matter, to assert such a direct claim, but does not dispense with a showing that subject matter jurisdiction supports it . . . In this respect the statute adopts the U.S. Supreme Court's holding in Owen Equipment &

---

[2] Ancillary jurisdiction supports jurisdiction of certain claims interposed by parties other than the plaintiff. For example, ancillary jurisdiction supports jurisdiction of a third-party (impleader) claim pursuant to Rule 14 that does not otherwise have jurisdiction. David Seigel, Practice Commentary, "The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction,"*printed in* 28 U.S.C.A. § 1367 at 830. (West 1993). See also Herrick Co. v. SCS Communications, Inc.:
> Supplemental jurisdiction had variously been called ancillary or pendant. "Traditionally, ancillary jurisdiction refers to joinder, usually by a party other than the plaintiff, of additional claims and parties added after the plaintiff's claim has been filed ... Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant ... Nevertheless, 28 U.S.C. § 1367, adopted in 1990, has eliminated any difference [between the two] that might once have existed .... (internal citations and quotations omitted).

251 F.3d 315, 325 n. 6 (2d Cir. 2001).

Erection Co. v. Kroger, 437 U.S. 365 (1978).[3]

> In [Kroger], P of Iowa sued D of Nebraska, who impleaded X, a corporation and a citizen of both Nebraska and Iowa. There was no trouble about jurisdiction for D's impleader claim against X, even though it lacked diversity; ancillary . . . jurisdiction supported it. But the doctrine was not allowed to support the claim P attempted to interpose directly against X (which also lacked diversity) after X was impleaded. That would have been a back door by which the plaintiff could secure the equivalent of an otherwise lacking original jurisdiction against a given defendant. [Kroger] closed that back door, and Congress kept it locked with § 1367(b).

David Seigel, Practice Commentary, "The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction," *printed in* 28 U.S.C.A. § 1367 at 832-33 (West 1993).

Accordingly, "[w]hen a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). Further clarification of the diversity jurisdiction issue comes in a more recent Supreme Court decision. "Although district courts may not exercise jurisdiction absent a statutory basis, once a court has original jurisdiction over some claims in an action, it may exercise supplemental jurisdiction over additional claims arising from the same case or controversy. This expansive interpretation does not apply to § 1332's complete diversity requirement, *for incomplete diversity destroys original*

---

[3] In Kroger, the Court held that ancillary jurisdiction is primarily a tool for defendants, in court against their will, to facilitate their assertion of claims against others, and that it can't be used by a plaintiff to secure subject matter jurisdiction with respect to a third-party defendant of whom it would have been lacking had he been an original defendant. Seigel, *supra*, at 830.

8

*jurisdiction with respect to all claims, leaving nothing to which supplemental claims can adhere.*" <u>Exxon Mobil Corp. v Allapattah Services, Inc.</u>, 125 S. Ct. 2611, 2613 (2005) (emphasis added) (internal quotations omitted).

"Once a defendant has filed a notice of removal in the federal district court, a plaintiff objecting to removal 'on the basis of any defect in removal procedure,' may, within 30 days, file a motion asking the district court to remand the case to state court. § 1447(c)."[4]  <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 69 (1996)  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." **However, a jurisdictional defect due to lack of complete diversity can be cured by subsequent events.** <u>Id.</u> at 62 (diversity became complete when the non-diverse party was formally dismissed).

### B.     Applying the Law to the Facts of this Case

In the case at bar, complete diversity existed when the case was removed to federal court.  The Plaintiffs did not submit a motion to remand "on the basis of any defect in the removal procedure" to the Court within the 30 day window set forth above.  Now, however, the Plaintiffs have filed a direct action against Komar, destroying complete

---

[4]     28 U.S.C.A. § 1447(c) states in pertinent part that:

[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....

diversity pursuant to 28 U.S.C. § 1332.  The case law is clear that 28 U.S.C. § 1367 does not provide a back door through which the Plaintiffs can obtain jurisdiction over a non-diverse party.

In the Plaintiffs' minimal response[5] to Komar's motion to dismiss, they suggest that "the only fair result to protect the interest of all parties [] is for this Honorable Court to remand this entire action [] back to the State Court." (Dkt. 28 at 3, emphasis in original.)  Because the Plaintiffs made no attempt to proffer grounds for remand at the time the case was removed, this Court will not allow the Plaintiffs' direct complaint against Komar to become a vehicle for remand to the state court, their chosen forum, when no grounds for remand existed prior to the destruction of complete diversity by the Plaintiffs themselves.

Komar also raises the issue of whether Ace is an indispensable party to the case.  Because the Court clearly has no subject matter jurisdiction over the Plaintiffs' direct complaint against Komar, and will grant Komar's motion to dismiss, the Court need not address the issue of Ace's status as an indispensable party.

The Plaintiffs' complaint against Komar is expressly prohibited by 28 U.S.C. § 1367(b).  In addition, by destroying complete diversity, the Plaintiffs have alternatively

---

[5] The sparse response to Komar's motion to dismiss was almost completely devoid of any case law, but for one inapposite 10th Circuit decision.  In addition, the Honorable George H. Lowe, Magistrate Judge, requested a letter-brief from St. Paul, stating the reasons why the Court has subject-matter jurisdiction over the direct claim by St. Paul and Ace against Komar.  St. Paul responded by filing a one-page letter devoid of case law.  St. Paul simply requested that the Court assert supplemental jurisdiction over Ace's claims.

paved the way for this Court, in its discretion, to dismiss the action in its entirety. However, in the interest of judicial economy and fairness to all parties, the Court will grant Komar's motion to dismiss the direct action against it, and consequently will consider the jurisdictional defect of incomplete diversity to be cured.

**III. Conclusion**

Accordingly, for the reasons set forth above,

(1) Komar's motion to dismiss the Plaintiffs' direct action is GRANTED; and

(2) The case is referred back to the Honorable George H. Lowe, Magistrate Judge, for the purpose of scheduling a Local Rule 16 pre-trial conference, to determine if the matter is ready for trial; to determine if a settlement conference is desired; or in the alternative, to set deadlines for discovery.

SO ORDERED.

May 19, 2006

_____
Neal P. McCurn
Senior U.S. District Judge